1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SARAH IMAD MAADARANI,                        No.  2:24-cv-1325 DC SCR (PS)

12                         Plaintiff,

13        v.                                      AMENDED ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
14   ALEJANDRO MAYORKAS, et al.,

15                         Defendants.

16

17        Plaintiff Sarah Imad Maadarani proceeds pro se in this action, which was referred to the

18   undersigned pursuant to Local Rule 302(c)(21).  Plaintiff's spouse applied for a visa that would

19   allow him to immigrate to the United States from Lebanon and be reunited with Plaintiff and their

20   young child.  Staff at the U.S. Embassy in Lebanon interviewed him on June 26, 2023, but his

21   visa application remains in administrative processing.  Earlier this year, Plaintiff filed this action

22   to challenge the delay in adjudication of her spouse's visa and sought to proceed in forma

23   pauperis (IFP).  See ECF No. 2; 28 U.S.C. § 1915(a)(1).  Before the Court was able to screen the

24   complaint as required in IFP cases by § 1915(e)(2), Defendants, who are federal officials, filed a

25   motion to dismiss and, in the alternative, a motion for summary judgment.  ECF No. 5.  For the

26   reasons provided below, the undersigned grants Plaintiff IFP status and recommends that the

27   motion to dismiss be denied and motion for summary judgment be denied without prejudice.

28   ////

                                          1

# I.   Background

## A.  The Complaint

On May 9, 2024, Plaintiff filed a complaint against Defendants Alejandro Mayorkas, Secretary of U.S. Department of Homeland Security, Ur Jaddou, Director of U.S. Citizenship and Immigration Services (USCIS), Christopher Wray, Director of the Federal Bureau of Investigations, and Antony J. Blinken, Secretary of U.S. Department of State (DOS), alleging unreasonable delay of her spouse's visa application in violation of the Mandamus Act, 28 U.S.C. § 1361.  ECF No. 1 at 4.

Plaintiff presents the following factual allegations.[1]  On January 6, 2021, she filed a visa petition with USCIS for her spouse, Hadi Ali Moussawi. *Id.* at 3.  On December 14, 2021, USCIS approved the visa petition and referred the petition to the DOS's National Visa Center (NVC). *Id.*  On June 26, 2023, a consular officer at the U.S. Embassy in Lebanon interviewed Mr. Moussawi. *Id.*  The consular officer refused Mr. Moussawi's visa under INA § 221(g) but placed the application in "administrative processing." *See id.* at 4, 18 (Exh. F).

As the DOS "Refusal Worksheet" for Mr. Moussawi's application noted, § 221(g) "prohibits the issuance of a visa to anyone whose application does not comply with the provisions of the [INA] or regulations issued thereto." *Id.* at 18 (Exh. F).  Beyond that general explanation, DOS provided no reason for the application's refusal.  While the Refusal Worksheet advised that "this decision constitutes denial of a visa," it also stated that "[a]dditional administrative processing is required, and further information from you is needed." *Id.*  In particular, DOS requested that Mr. Moussawi submit Form DS-5535, which includes supplemental questions for visa applicants. *Id.* at 4, 18 (Exh. F).  The Refusal Worksheet also stated that "[a]dministrative processing takes an average of 60 days, but it may take longer in some cases." *Id.* at 18 (Exh. F). It further stated, "If you fail to take the action requested"—e.g., submission of Form DS-5535—

---

[1]  Plaintiff attached several exhibits to the complaint, which the Court can consider in screening the complaint under the IFP statute and ruling on Defendants' motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may … consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

"within one year following visa denial under Section 221(g) of the [INA] then Section 203(g) of the Act will require termination of the petition on which your visa application was based." *Id.*

On June 28, 2023, Mr. Moussawi submitted a completed Form DS-5535 to DOS.  The form provided two-and-a-half pages of information about his travel history, family members, residential and contact information, online activity, and employment history.  *See id.* at 3, 19-22 (Exh. F).  Since then, Plaintiff has made multiple attempts to contact the Embassy, USCIS, the DOS, and the NVC for clarification and further information, but has received no response.  *Id.* at 4.  As of April 8, 2024, information on a DOS website indicated that Mr. Moussawi's visa application remained in administrative processing.  *Id.* at 23 (Exh. G).  The website reiterated what the DOS Refusal Worksheet stated—that if an applicant's case was placed in administrative processing, the applicant will receive another adjudication once such processing is complete.  *Id.*

Plaintiff further alleges that because of the delay, Plaintiff and her daughter have suffered "great stress" and that Mr. Moussawi was unable to be present when their daughter was born and has still not met her because it is unsafe for Plaintiff and her daughter to travel to Lebanon.  *Id.* at 4-5.  Plaintiff also alleges that it is unsafe for her spouse to remain in Lebanon.  *Id.* at 5.

**B. Motions to Dismiss and for Summary Judgment**

Defendants filed a motion to dismiss, or in the alternative, motion for summary judgment on three grounds that: (1) under the doctrine of consular nonreviewability, the courts cannot review consular actions on visa applications; (2) even if they could, "the Department of State does not owe Plaintiff's spouse a nondiscretionary duty to reconsider, within a specified timeframe"; and (3) the 10-month delay between the refusal and the date Plaintiff filed this action in not unreasonable.  ECF No. 5 at 3.

Plaintiff filed an opposition to the motion for summary judgment and a statement of disputed facts.  ECF No. 8.  Defendants filed a reply brief and several notices of supplemental authority.  ECF No. 9, 10, 12, 13.

Plaintiff also filed a motion to supplement the record, ECF No. 14, which details the threat her husband faces in Lebanon given the ongoing violence there, and a motion for hearing on defendants' motion for summary judgment, ECF No. 15.

### C.  Immigrant Visa Process

Immigrant visa processing based on a family relationship involves two steps.  *Dep't of State v. Muñoz*, 144 S.Ct. 1812, 1818 (2024).  The two-step process operates differently depending on various factors, such as the status of the petitioner, the familial relationship between the petitioner and the beneficiary, the location of the beneficiary at the time they are applying (e.g. applying inside or outside the United States), and, if applying within the United States, whether that person can adjust status in the United States or has to depart and go through consular processing.  *See* 8 U.S.C. §§ 1151, 1154, 1255(a).  Because this case involves a U.S. citizen petitioner and a spouse beneficiary abroad, the Court describes the process for an "immediate relative" abroad.  8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A); 8 C.F.R. § 204.1(a)(1).

At step one, the U.S. citizen or lawful permanent resident (LPR) files a petition with USCIS to establish a qualifying relationship between the U.S. citizen or LPR petitioner and the beneficiary.  *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46–47 (2014) (plurality opinion); 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A); 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition, the noncitizen beneficiary proceeds to step two—application for a visa.

At step two, if the noncitizen visa applicant is abroad, USCIS sends the approved petition to the NVC for processing.  8 U.S.C. §§ 1154(b), 1201, 1202.  A consular officer then interviews the immigrant.  8 U.S.C. § 1202(h).  "When a visa application has been properly completed and executed before a consular officer . . . the consular officer must [1] issue the visa, [2] refuse the visa under INA § 212(a) or § 221(g) or other applicable law or, [3] pursuant to an outstanding order under INA § 243(d), discontinue granting the visa."  22 C.F.R. § 42.81(a); *see* 8 U.S.C. §§ 1201(a), (g).  Under INA § 221(g), if a consular officer determines that a noncitizen is ineligible to receive a visa, the visa is refused.  8 U.S.C. § 1201(g).[2]

Whenever a consular officer believes the information provided in a visa application "is inadequate to determine the [noncitizen's] eligibility to receive an immigrant visa," the officer "may require the submission of additional information or question the [noncitizen] on any

---

[2]  Section 1201(g) of Title 8 of the United States Code codifies INA § 221(g).

4

1  relevant matter." 42 C.F.R. § 42.63(c). Additional statements or information provided by the

2  visa applicant become part of the visa application and "are considered papers submitted with the

3  [noncitizen's] application within the meaning of INA § 221(g)(1)." *Id.*

4        Regulations establish certain timelines for any post-refusal processing. "If a visa is

5  refused, and the applicant within one year from the date of refusal adduces further evidence

6  tending to overcome the ground of ineligibility on which the refusal was based, the case shall be

7  reconsidered." 22 C.F.R. § 42.81(e) (emphasis added). "[I]f, within one year following the

8  refusal of the immigrant visa application under INA § 221(g), the [noncitizen] has failed to

9  present to a consular officer evidence purporting to overcome the basis for the refusal" the

10  noncitizen's "registration for an immigrant visa shall be terminated." 22 C.F.R. § 42.83(b).

11                   **II.**     **Legal Standards**

12       **A. IFP Screening**

13        The federal IFP statute requires federal courts to dismiss a case at the outset if the action is

14  legally "frivolous or malicious," fails to state a claim upon which relief may be granted or seeks

15  monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

16  Courts review the complaint that initiates the case to perform this screening function.

17        Under the Federal Rules of Civil Procedure, the complaint must contain (1) a "short and

18  plain statement" of the basis for federal jurisdiction (that is, the reason the case is filed in this

19  court, rather than in a state court), (2) a short and plain statement showing that plaintiff is entitled

20  to relief (that is, who harmed the plaintiff, and in what way), and (3) a demand for the relief

21  sought. Fed. R. Civ. P. 8(a). A plaintiff's claims must be set forth simply, concisely and directly.

22  Fed. R. Civ. P. 8(d)(1).

23        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

24  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). In reviewing a complaint under this standard, the

25  Court will (1) accept as true all the factual allegations contained in the complaint, unless they are

26  clearly baseless or fanciful, (2) construe those allegations in the light most favorable to the

27  plaintiff, and (3) resolve all doubts in the plaintiff's favor. *See Neitzke*, 490 U.S. at 327; *Von*

28  *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010), *cert.*

1  *denied*, 564 U.S. 1037 (2011).

2      The Court applies the same rules of construction in determining whether the complaint

3  states a claim on which relief can be granted. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (court

4  must accept the allegations as true); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (court must

5  construe the complaint in the light most favorable to the plaintiff).  Pro se pleadings are held to a

6  less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520

7  (1972).  However, the court need not accept as true conclusory allegations, unreasonable

8  inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618,

9  624 (9th Cir. 1981).  A formulaic recitation of the elements of a cause of action does not suffice

10  to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Ashcroft v. Iqbal*,

11  556 U.S. 662, 678 (2009).

12      To state a claim on which relief may be granted, the plaintiff must allege enough facts "to

13  state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has

14  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

15  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

16  678.  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity

17  to amend, unless the complaint's deficiencies could not be cured by amendment. *See Noll v.*

18  *Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in

19  *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)) (en banc).

20      **B.  Motion to Dismiss - Rule 12(b)(6)**

21      A defendant may move to dismiss a claim under Rule 12(b)(6) if the allegation "fail[s] to

22  state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The standard for

23  determining whether a plaintiff has failed to state a claim upon which relief can be granted under

24  Rule 12(b)(6) is the same as the standard under § 1915(e)(2) failure to state a claim. *Watison v.*

25  *Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  "Ultimately, dismissal is proper under Rule

26  12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its

27  claims." *Boquist v. Courtney*, 32 F.4th 764, 773-74 (9th Cir. 2022) (cleaned up).

28  ////

### C.  Motion for Summary Judgment – Rule 56

Summary judgment is appropriate when the moving party has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The moving party bears the initial "burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  This can be done by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the . . . presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  "This burden is not a light one." *In re Oracle*, 627 F.3d at 387.  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

If the moving party meets its burden, the burden then shifts to the non-moving party to "designate specific facts showing a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation marks omitted).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  The non-moving party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute.  *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  If facts are unavailable to the non-moving party, the non-moving party should file an affidavit or declaration specifying the reasons "it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).

1    In deciding a summary judgment motion, the Court must view the evidence in the light

2    most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Messick v.*

3    *Novartis Pharm. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372,

4    378 (2007)).  However, a mere "scintilla of evidence" in support of the non-moving party's

5    position is insufficient; "there must be evidence on which the jury could reasonably find for the

6    [non-moving party]."  *Anderson*, 477 U.S. at 252.

7                                    **III.    Analysis**

8        **A.  The Doctrine of Nonreviewability Does Not Apply**

9            **1.  The Parties' Positions**

10   Defendants argue that Plaintiff's claims should be dismissed because the doctrine of

11   consular nonreviewability applies in this case, where on June 26, 2023, the consular officer

12   completed his nondiscretionary duty to review and adjudicate Mr. Moussawi's visa application by

13   refusing it under 8 U.S.C. § 1201(g).  ECF No. 5 at 9 (citing *Bechirian v. Blinken*, No. 20-55913,

14   2022 WL 260052 (9th Cir. Jan. 2022)).  Defendants further argue that the doctrine applies

15   regardless of whether the decision is subject to possible re-adjudication or mischaracterized as

16   non-final.  ECF No. 5 at 9 (citing *Allen v. Milas*, 896 F.3d 1094, 1108-09 (9th Cir. 2018)).

17   Defendants insist that "the existence of a procedural mechanism to overcome a visa refusal does

18   not undermine the fact that a § 1201(g) refusal concludes the consular officer's adjudication of

19   the visa application."  ECF No. 5 at 10 (citing several federal California district court cases).  In

20   other words, Defendant's position is that the refusal of Mr. Moussawi's visa on June 26, 2023

21   was a denial of the visa that is final and subject to the doctrine of consular nonreviewability.

22   In opposition, Plaintiff responds that the doctrine does not apply because "[c]ourts may be

23   more willing to review a case if it appears the decision is made arbitrarily or without proper

24   explanation" or "the refusal violates the constitutional rights of U.S. citizens," such as the right to

25   family unity.  ECF No. 8 at 8.

26   In reply, Defendants once again assert that the doctrine applies, this time primarily relying

27   on a recent Supreme Court decision, *Muñoz*, 144 S.Ct. 1812.  ECF No. 9 at 4.

28   ////

1

**2. Discussion**

2      Consular nonreviewability generally insulates a consular officer's decision to deny a visa

3  from judicial review. *Muñoz*, 144 S.Ct. at 1820. When consular nonreviewability otherwise

4  applies, there is a narrow exception when the visa denial impinges on the constitutional rights of a

5  U.S. citizen. *Id.* However, as the undersigned recently concluded in a similar consular delay

6  case, *Sheikhalizadejahed v. Gaudiosi, et al.*, No. 2:24-cv-1136 SCR, 2024 WL 4505648 (E.D.

7  Cal. Oct. 16, 2024), the doctrine of consular nonreviewability does not apply to this case at all.

8  That is because Plaintiff challenges only the delay in rendering a final decision on a visa

9  application and not the decision itself. *See Sheikhalizadejahed*, 2024 WL 4505648 at *4-6.

10      *Muñoz* does not control cases where the substantive cause of action is a delayed decision.

11  In *Muñoz*, the Supreme Court addressed the constitutional-rights-of-a-U.S. citizen exception to

12  consular nonreviewability. There, the plaintiff, a U.S. citizen, sought a visa for her spouse. *Id.* at

13  1818. Pursuant to the visa process, plaintiff's spouse left the United States for consular

14  interviews in El Salvador. *Id.* After several such interviews, a consular officer denied his

15  application, citing a specific ground of inadmissibility under 8 U.S.C. § 1182. *Id.* at 819.

16  Plaintiff and her spouse pressed for reconsideration and submitted evidence to refute the ground

17  of inadmissibility, but DOS affirmed the consulate's determination. *Id.* The consul in El

18  Salvador then informed them that the "application had gone through multiple rounds of review—

19  including by the consular officer, consular supervisors, the consul himself, the Bureau of

20  Consular Affairs, and the State Department's Immigration Visa Unit—and none of these reviews

21  had revealed any grounds to change the finding of inadmissibility." *Id.* (internal quotations

22  omitted).

23      After the decision was final, plaintiff sued DOS, arguing that DOS violated her

24  "constitutional liberty interest in her husband's visa application by failing to give a sufficient

25  reason why [her husband] is inadmissible under the unlawful activity bar." *Id.* (internal

26  quotations omitted). The Supreme Court took the case to address two issues: (1) whether the visa

27  denial of a U.S. citizen's noncitizen spouse impinges on a constitutionally protected interest of a

28  U.S. citizen; and (2) if so, whether the denial and citation to the specific ground of inadmissibility

1   was sufficient process.  *Id.* at 1828 n.1 (Sotomayor, J., dissenting).  The Supreme Court held that

2   "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to

3   the country" and as such could not invoke the exception to the doctrine of nonreviewability.  *Id.*

4   at 1821.

5         To the extent Plaintiff is arguing that the exception to consular nonreviewability applies,

6   ECF No. 8 at 8, Defendants are correct that *Muñoz* foreclosed such argument.  *Muñoz*, 144 S.Ct.

7   at 1821.  However, based on the allegations in the Complaint, the basis for Plaintiff's claim is that

8   Defendants have not rendered a final decision on her husband's visa application.  ECF No. 1 at 5

9   (claims for relief based on "Defendants' failure to make a determination on [her husband's]

10  application . . . within a reasonable period of time, notwithstanding a clear right to relief and

11  Defendants' clear duty to adjudicate the application").  Accordingly, Plaintiff asks the Court to

12  order Defendants to issue a final decision.  *Id.*  Since *Muñoz* dealt with the applicability of the

13  doctrine of consular nonreviewability to a *final* decision, and, as described below, the consular

14  officer's decision in the present case is *not* final, consular nonreviewability is not triggered.

15        Additionally, in *Muñoz*, the Supreme Court did not address a situation where the visa

16  application had been refused and was stuck in indefinite "administrative processing."  Here, it is

17  unclear what, if anything, has happened since Mr. Moussawi's case was placed in "administrative

18  processing."  As another judge of this Court explained, "[t]he INA and related regulations do not

19  account for this 'administrative processing' designation, which has the effect of placing

20  [noncitizen's] application in administrative limbo."  *Jafarzadeh v. Blinken*, No. 1:23-cv-0770

21  KJM CDB, 2024 WL 3937417, at *3 (E.D. Cal. Aug. 26, 2024).

22        *Allen* and *Bechirian* are similarly distinguishable.  Like *Muñoz*, *Allen* and *Bechirian* dealt

23  with a challenge to a consular officer's final decision on the merits and did not involve a case

24  where a visa application was placed into "administrative processing."  *See Allen*, 896 F.3d 1094;

25  *Bechirian*, 2022 WL 260052.

26        Accepting Plaintiff's allegations as true and construing them in the light most favorable to

27  her, the Court concludes that the following factual allegations indicate Plaintiff's spouse's visa

28  application is pending final adjudication: the consular officer's refusal of Plaintiff's spouse's visa

application under 8 U.S.C. § 1201(g); the communication to Plaintiff's spouse that his visa was under "administrative processing" and that his visa would be adjudicated once "administrative processing" was complete; DOS's request for more information from Plaintiff via Form DS-5535; the regulations stating that a visa application is not "terminated" after initial refusal under § 1201(g); and the DOS website's indication that Mr. Moussawi's visa application remains in "administrative proceedings."[3]   A request to complete a Form DS-5535, shows that the consular officer did not reach a final decision at the interview because whenever an officer requests additional information to make a visa eligibility determination, that information becomes part of the application, and is *considered* when making an eligibility determination under 8 U.S.C. § 1201(g). 42 C.F.R. § 42.63.   In reaching this conclusion, the Court follows several other decisions finding that when a case is refused and placed in "administrative processing" it cannot be said that a final decision has been rendered. *Jafarzadeh*, 2024 WL 3937417, at *3 ("the instructions to fill out an additional questionnaire, the lack of the term 'permanent termination' or 'final adjudication,' and the fact that [the noncitizen's] application is still undergoing administrative processing show there has been no final determination on his visa application"); *Ali v. Ordeman*, No. 2:23-cv-2822 CKD, 2024 WL 2274912, at *4 (E.D. Cal. May 20, 2024) (placing a visa application in administrative processing by a refusal under 8 U.S.C. § 1201(g) is not a final decision); *Abassi v. Gaudiosi*, No. 1:23-cv-01573-CDB, 2024 WL 1995246, at *4 (E.D. Cal. May 6, 2024) (noting "prevailing position . . . that the doctrine [of consular

---

[3]  Standard information on DOS's website further reinforces these conclusions.  *See* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html ("Upon completion of the case-specific administrative processing, the consular officer might conclude that an applicant is now qualified for the visa for which he or she applied."); https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-12-after-the-interview.html ("Some visa applications refused under 221(g) of the [INA] may require further administrative processing. . . . At the conclusion of the administrative processing period, the consular officer may conclude that an applicant is now qualified for the visa for which he or she applied. . . . [B]efore making inquiries about the status of administrative processing, applicants should wait at least 180 days from the date of interview or submission of supplemental documents . . . ").  The Court may properly take judicial notice of information available on the DOS website, *see Abassi v. Gaudiosi*, 2024 WL 1995246 (E.D. Cal. May 6, 2024), without converting the motion to dismiss into a motion for summary judgment, *see Ritchie*, 342 F.3d at 907-08.

11

1   nonreviewability] does not bar review of an as-yet final adjudication of a visa application in

2   administrative processing"); *Mohamed v. Pompeo*, No. 19-01345, 2019 WL 4734927, at *4 (E.D.

3   Cal. Sept. 27, 2019); *Rasoulzadeh v. Tillerson*, No. 17-2399, 2018 W 1426965, at *2 (S.D. Cal.

4   Mar. 22, 2018) (denying motion to dismiss as moot because "there is a dispute of fact as to

5   whether [the] visa application has been denied or whether it is still undergoing administrative

6   processing"); *Gonzalez v. Baran*, No. 21-05902, 2022 WL 1843148, at *3 (C.D. Cal. Jan. 11,

7   2022) (holding similarly and collecting authority); *Taherian v. Blinken*, No. 23-01927, 2024 WL

8   1652625, at *3 (C.D. Cal. Jan. 16, 2024) (same); *Shahijani v. Laitinen*, No. 23-03967, 2023 WL

9   6889774, at *3 (C.D. Cal. Oct. 6, 2023) (same).  District courts in other circuits have reached the

10  same conclusion.  *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. To

11  the United Sates v. Kerry*, 168 F. Supp. 3d 268, 285-89 (D.D.C. Apr. 8, 2020) (collecting

12  authority across the country).

13          Moreover, it is evident to the Court that "administrative processing" amounts to nothing

14  more than holding those cases in abeyance for an undefined period of time.  *Jafarzadeh*, 2024

15  WL 3937417, at *3 ("[t]he INA and related regulations do not account for this 'administrative

16  processing' designation, which has the effect of placing [noncitizen's] application in

17  administrative limbo . . .").[4]  In such case, it cannot be said a final decision has been rendered.

18  *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997) (finding that a refusal was not a final decision

19  where the consul admitted it was holding the application in abeyance).

20  ////

21

22  [4]  Although not binding, the Foreign Affairs Manual (FAM) also suggests that a visa "refusal" is
    nothing more than an administrative abeyance.  *See Scales v. Immigration and Naturalization
23  Serv.*, 232 F.3d 1159, 1166 (9th Cir. 2000) (FAM "lack[s] the force of law" because it was not
    issued pursuant to notice-and-comment rulemaking).  The FAM states that "once a visa
24  application has been properly completed and executed before a consular officer," the consular
    officer must as a matter of course refuse the visa by end of the working day or the next working
25  day even if "a case is medically deferred," the consular officers decides "to make additional local
    inquiries or conduct a full investigation" or request an advisory opinion from the Department, or
26  "the only deficiency is a clearance from another post."  9 FAM 504.1-3(i)(1)(a)-(d).  The FAM
    also states that "when the case required additional administrative processing, which has been
27  completed," the consular officer "should overcome the previous refusal, allowing the case to be
    *adjudicated*."  9 FAM 504.11-4(A)(b) (emphasis added).

28

1    Accordingly, the doctrine of consular nonreviewability does not apply.

2    **B.  Plaintiff States a Claim under the Mandamus Act**

3    The Mandamus Act "provides district courts with mandamus power 'to compel an officer

4    or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'"

5    *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. § 1361).  "An

6    order pursuant to § 1361 is available only if (1) the claim is clear and certain; (2) the official's or

7    agency's 'duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from

8    doubt'; and (3) no other adequate remedy is available."  *Agua Caliente Tribe of Cupeño Indians*

9    *of Pala Rsrv. v. Sweeney*, 932 F.3d 1207, 1216 (9th Cir. 2019) (quoting *Patel v. Reno*, 134 F.3d

10   929, 931 (9th Cir. 1997)).

11   Defendants argue that Plaintiff's mandamus claim must fail because "[t]here is no statute

12   or regulation that imposes a non-discretionary duty on consular officers to reconsider, within a

13   specified timeframe, a refused visa application."  ECF No. 5 at 11.  In opposition, Plaintiff argues

14   that "under the Administrative Procedure Act (APA), agencies are required to conclude matters

15   presented to them within a reasonable time (5 U.S.C. § 555(b))."  ECF No. 8 at 8-9.  Defendants

16   reply that Plaintiff has not identified authority to support her contention that Defendants owed her

17   a nondiscretionary duty to reconsider her spouse's visa application, and that, even if the Court

18   could look to the APA for a baseline requirement, "there is no measurable criteria" for a

19   "generalized reasonableness" standard, and therefore Plaintiff cannot establish that a 10- or 12-

20   month delay is so unreasonable that it warrants either APA or mandamus relief.[5]  ECF No. 9 at 5.

21   ////

22

23   [5]  To clarify, neither the Complaint nor Plaintiff's opposition assert a claim under the APA.  ECF
     No. 1 at 5-6; ECF No. 8 at 8-9.  Instead, Plaintiff cites to 5 U.S.C. § 555(b) to assert the existence
24   of a nondiscretionary duty that would entitle her to mandamus relief.  Accordingly, the Court
     turns to the APA primarily for the purpose of determining whether it establishes a
25   nondiscretionary duty under the circumstances Plaintiff alleges and, to the extent it does, whether
     Defendants have satisfied their duty.  Moreover, "the Supreme Court has construed a claim
26   seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the
     APA."  *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting *Japan Whaling*
27   *Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).  The Court may thus also rely on
     agency delay claims brought under the APA to resolve Plaintiff's mandamus claim.

28

1 **1. Defendants Have a Nondiscretionary Duty to Act**

2 As an initial matter, Defendants misconstrue the nondiscretionary duty identified by the

3 Plaintiff.  Plaintiff is not asking defendants to reconsider a consular officer's decision; rather,

4 Plaintiff is asking that Defendants complete adjudication of her spouse's visa application, which

5 allegedly has not been completed.  ECF No. 1 at 5.  As such, the question is whether Defendants

6 owe Plaintiff a nondiscretionary duty to adjudicate her spouse's visa petition to a conclusion.  As

7 in *Sheikhalizadejahed*, 2024 WL 4505648, at *7-8, the Court concludes that they do.

8 Section 555(b) of the APA creates a non-discretionary duty to render a final adjudication

9 on a visa application.  *Khan*, 2024 WL 3446432, at *5 ("A non-discretionary duty is upon the

10 Government under 5 U.S.C. § 555, which requires adjudication of immigrant visa applications

11 within a reasonable time."); *Iqbal v. Blinken*, 2023 WL 7418353, at *7 (E.D. Cal. Nov. 9, 2023)

12 (finding that "[t]he APA imposes a clear nondiscretionary duty" on defendants to adjudicate

13 immigrant visa petitions within a reasonable time); *Akm Tareque v. Rena Bitter et al*, 2024 WL

14 3914507, at *4 (C.D. Cal. Aug. 13, 2024); *see also, e.g., Ahrary v. Curda*, 2012 WL 1641411, at

15 *2 (E.D. Cal. May 9, 2012) (§ 555(b) of the APA imposed a nondiscretionary duty on defendants

16 to adjudicate I-485 applications); *but see Karimova v. Abate*, 2024 WL 3517852, at *3 (D.C. Cir.

17 2024) (§ 555(b) of the APA does not place a clear nondiscretionary duty on a "consular officer to

18 re-adjudicate her already-refused application").  Section 555(b) states, "[w]ith due regard for the

19 convenience and necessity of the parties or their representatives and within a reasonable time,

20 each agency *shall proceed to conclude* a matter presented to it."  (Emphasis added.)

21 The Court is not persuaded by Defendants' reliance on *Karimova*'s holding regarding

22 § 555(b).  ECF No. 10.  *Karimova* primarily relied on the Foreign Affairs Manual (FAM) to

23 determine that an initial visa refusal constitutes a final decision.  2024 WL 3517852 at *1, 2.  As

24 noted above, the FAM "lack[s] the force of law" in the Ninth Circuit.  *Scales*, 232 F.3d at 1166;

25 *see note 4, supra*.  Accordingly, the Court looks to regulations, including 22 C.F.R. §§ 42.63(c)

26 and 42.83(b), and the information DOS communicated to Plaintiff's spouse, to define the concept

27 of final adjudication.  Based on these sources, an initial refusal and subsequent administrative

28 processing is equivalent to placing a case in abeyance—thus suggesting the case has not been

1  adjudicated to a conclusion.  In any event, to the extent the FAM is informative, it too suggests

2  that the decision here is not final.  *See* note 4, *supra*.  It is also worth noting that at least one

3  district court judge within the D.C. Circuit itself has "decline[d] to follow" *Karimova*.  *See*

4  *Hajizadeh v. Blinken*, No. 23-cv-1766 (LLA), 2024 WL 3638336, at *3 n.3 (Aug. 2, 2024).

5       Additionally, the undersigned is persuaded, despite the split among courts,[6] including

6  among judges within this Court, that 8 U.S.C. § 1202(b) independently imposes a non-

7  discretionary duty to review and adjudicate visa applications.  *See Khan v. Blinken*, No. 2:23-cv-

8  02814-CKD, 2024 WL 3446432, at *4 (E.D. Cal. July 17, 2024) (recognizing the split); *Iqbal*,

9  2023 WL 7418353, at *6 (finding that "§ 1202(b) does impose a mandatory duty on defendants to

10  review and adjudicate the beneficiary plaintiffs' visa applications"); *Council on American-Islamic*

11  *Relations, California v. Blinken*, No. 2:22-cv-1500 TLN KJN, 2022 WL 4472914, at * 3-4 (E.D.

12  Cal. Sept. 25, 2022) (plaintiffs did not show likelihood of success on the merits where § 1202(b)

13  did not impose a mandatory duty for the State Department to adjudicate any visa).  Section

14  1202(b) provides, in relevant part, "All immigrant visa applications shall be reviewed and

15  adjudicated by a consular officer."  The initial refusal of Plaintiff's spouse's visa application

16  (while placing it in "administrative processing") does not dispense with this duty because there

17  has been no final adjudication.  Any other interpretation of § 1202(b) in these circumstances

18  would allow DOS to evade all judicial review of delayed adjudications by issuing *pro forma*

19  refusals while continuing to administratively process cases.  *See Guerrero-Lasprilla v. Barr*, 589

20  U.S. 221, 229 (2020) ("We have consistently applied the presumption of reviewability to

21

22  [6]  Some courts have held that § 1202(b) imposes a mandatory, nondiscretionary duty to review
and adjudicate a visa application.  *See Iqbal*, 2023 WL 7418353, at *6; *Durham v. Blinken*, No.
24-02868 PSG (MRWx), 2024 WL 381146, at *4 (C.D. Cal. Aug. 8, 2024) (same); *Azam v.*

23  *Bitter*, 2024 WL 912516, at *5-6 (D.N.J. Mar. 4, 2024) (same); *Igal v. U.S. Consulate General in*
*Johannesburg*, No. 2:23-cv-4160, 2024 WL 2882653, at *6 (S.D. Ohio June 7, 2024).  Other

24  courts have held that § 1202(b) imposes no such duty and only indicates who adjudicates visa
applications.  *Mueller v. Blinken*, No. 4:23-CV-24, 2023 WL 4759245, at *5 (E.D. Va. July 17,

25  2023) (§ 1202(b) does not impose a duty to act on a visa application); *Council on American-*
*Islamic Relations, California*, 2022 WL 4472914, at * 3-4.  A third set of courts have found

26  § 1202(b) imposes a mandatory duty to adjudicate an individual immigration visa application
only after the consular interview.  *Farooq v. Blinken*, 2023 WL 5658357, at *3 (C.D. Cal. Aug.

27  11, 2023); *Khalili-Araghi v. Bitter*, 2023 WL 5988590, at *4 (N.D. Cal. Sept. 13, 2023).

28

1   immigration statutes.").

2   Moreover, Defendants assertion that "[t]here is no statute or regulation that imposes a

3   non-discretionary duty on consular officers to reconsider, within a specified timeframe, a refused

4   visa application," ECF No. 5 at 11, is an overstatement.  Although there is not a statute or

5   regulation that sets a specific timeframe—more on that below—there is a regulation that creates a

6   nondiscretionary duty to reconsider a refusal under some circumstances.  22 C.F.R. § 42.81(e)

7   ("If a visa is refused, and the applicant within one year from the date of refusal adduces further

8   evidence tending to overcome the ground of ineligibility on which the refusal was based, the case

9   shall be reconsidered."); *see Rivas v. Napolitano*, 714 F.3d 1108, 1111-12 (9th Cir. 2013)

10  (holding that a court can compel agency action under the APA based on 22 C.F.R. § 42.81(e)

11  because the regulation imposes a nondiscretionary duty to reconsider a visa refusal where an

12  applicant presents further evidence tending to overcome the ground of ineligibility).  Here, after

13  refusal, Plaintiff's spouse submitted Form DS-5535 Supplemental Questions.  *See* ECF No. 1 at

14  3, 19-22 (Exh. F).  To the extent this evidence was submitted to overcome the ground of

15  ineligibility under § 1201(g), Plaintiff's spouse triggered a separate DOS nondiscretionary duty to

16  adjudicate a visa application initially refused.

17  Accordingly, Defendants have several nondiscretionary duties, any one of which would be

18  sufficient to require further action on Plaintiff's spouse's visa application.

19          **2.  Plaintiff Has Sufficiently Pleaded Unreasonable Delay**

20  In determining whether an agency action was unreasonably delayed, courts consider the

21  six "TRAC factors."  *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138 (9th Cir. 2020).  The

22  factors are:

23          (1) the time agencies take to make decisions must be governed by a rule of reason;
24          (2) where Congress has provided a timetable or other indication of the speed with
            which it expects the agency to proceed in the enabling statute, that statutory scheme
25          may supply content for this rule of reason; (3) delays that might be reasonable in the
            sphere of economic regulation are less tolerable when human health and welfare are
26          at stake; (4) the court should consider the effect of expediting delayed action on
            agency activities of a higher or competing priority; (5) the court should also take
27          into account the nature and extent of the interests prejudiced by delay; and (6) the
            court need not find any impropriety lurking behind agency lassitude in order to hold
28          that agency action is unreasonably delayed.

16

1    *Id*. at 1138–39 (quoting *Telecommc' ns Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79–80 (D.C.

2    Cir. 1984) (TRAC)).

3         Defendants argue that the TRAC factors for determining unreasonable delay weigh in

4    their favor.  ECF No. 5 at 14-22; ECF No. 9 at 6.  Plaintiff did not respond to this argument.  *See,*

5    *generally,* ECF No. 8.  However, because Plaintiff is pro se, the Court applies the framework used

6    in *Sheikhalizadejahed* to Defendants' argument.  *See* 2024 WL 4505648, at *8-10.

7         Given the fact-intensive nature of the TRAC factors, courts disagree on whether they

8    should be applied to resolve a motion to dismiss.  *Iqbal*, 2023 WL 7418353 at *7 (collecting

9    cases); *Li v. Blinken*, No. 8:23-cv-2142 DOC KES, 2024 WL 2107341, at *3 (C.D. Cal. Apr. 4,

10   2024) (same).  Absent binding case law, this Court agrees with the courts that have found TRAC

11   is more "appropriately applied after further briefing and discovery."  *Salarian v. Blinken*, No. 23-

12   cv-1315 LL BJC, 2024 WL 4008758, at *4 (S.D. Cal. Aug. 30, 2024); *see also Durham v.*

13   *Blinken*, No. CV 24-02868, at *5 (C.D. Cal. Aug. 8, 2024) ("Although the parties have briefed the

14   TRAC factors analysis, the Court finds it inappropriate to conduct the fact-analysis at this

15   stage."); *Iqbal*, 2023 WL 7418353 at *8 (denying motion to dismiss because "[t]his court finds

16   the reasonableness inquiry is best resolved ultimately on a full factual record"); *Fimbres v.*

17   *Cohan*, No. 23-cv-0562 TUC MAA, 2024 WL 3535402, at *4 (D. Ariz. July 25, 2024) (denying

18   motion to dismiss and declining to apply TRAC at this stage); *Tigranyan v. Gardland*, No. 2:24-

19   cv-0741 SPG RAO, 2024 WL 3740049, at *4 (C.D. Cal. July 1, 2024) (denying motion to dismiss

20   as premature "because the TRAC analysis is necessarily fact-intensive" and "is more appropriate

21   applied after some discovery than at the pleading stage"); *Li*, 2024 WL 2107341 at *3 (declining

22   to apply TRAC factors on motion to dismiss because they "are fact-intensive and inappropriate

23   for resolution on a motion to dismiss"); *Velagapudi v. United States Citizenship and Immigr.*

24   *Services*, et al., No. 4:22-CV-295 SRW, 2022 WL 4447409, at *6-8 (E.D. Mo. Sept. 23, 2022)

25   (denying motion to dismiss because application of TRAC factors was not possible at this stage in

26   the litigation); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020) ("At the motion

27   to dismiss stage, this Court need not consider whether the agency delay alleged is

28   ////

1   unreasonable.").[7]  There is nothing unusual about abstaining from undertaking such a fact-

2   intensive inquiry at the pleading stage.  Courts regularly do so.  *See Quiero v. Muniz*, 2015 WL

3   13738994, at *6 (M.D. Pa. Aug. 3, 2015) ("[T]he Court is unable to make a proper assessment of

4   the *Turner* factors at the motion to dismiss stage because the fact-intensive inquiry called for in

5   *Turner* requires at least some development of the evidentiary record."); *Kurdyla v. Pinkerton Sec.*,

6   197 F.R.D. 128 (D.N.J. 2000) ("Given the fact-intensive nature of the analysis and the number

7   and range of factors to consider, this Court concludes that it is inappropriate to grant a motion to

8   dismiss at this early stage."); *Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 352

9   (E.D.N.Y. 2003) (stating that veil-piercing "is typically a fact specific inquiry not amenable to

10  resolution [on] a motion to dismiss") (internal quotations omitted)).  But the Court must

11  nonetheless ensure that Plaintiff's complaint "contain[s] sufficient factual matter, accepted as

12  true, to 'state a claim to relief that is plausible on its face.'"  *Hinds Investments, L.P. v. Angioli*,

13  654 F.3d 846, 850 (9th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

14         As noted above, Plaintiff alleges the following: on June 26, 2023, Plaintiff's spouse was

15  interviewed by a consular officer at the U.S. Embassy in Lebanon; the application was refused

16  under § 1201(g); he was informed that "[a]dditional administrative processing is required, and

17  further information from you is needed," including the submission of Form DS-5535; he was

18  further informed that, "If you were informed by the consular officer that your case was refused

19  for administrative processing . . . [y]ou will receive another adjudication once such processing is

20  complete"; he submitted additional information through a completed Form DS-5535 two days

21  after the interview; and despite multiple attempts to inquire about the status the visa application,

22  they have receive no responses.  ECF No. 1 at 3-4, 18-24 (Exh. F & G).  Because of this, it is

---

[7]  *But see Abassi*, 2024 WL 1995246, at *3, 8 (analyzing the TRAC factors on a motion to dismiss after declining to convert Defendant's motion for summary judgment); *Aminzadeh v. Blinken*, No. 2:24-cv-02025 DSF MRW, 2024 WL 3811153, at  *5 (C.D. Cal. Aug. 9, 2024) (applying TRAC factors at the motion to dismiss stage); *Akm Tareque*, *5 (finding it appropriate to apply the TRAC factors on a motion to dismiss because the court had the benefit of the briefing on the issue); *Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *4 (D.D.C. Aug. 23, 2024) (applying TRAC factors on a motion to dismiss after determining that the record contained enough facts to do so).

1    unclear when, if ever, Plaintiff's spouse's visa application will be finally adjudicated.  *See id.* at

2    4-5.  After waiting almost 11 months without an update on the status of Plaintiff's spouse's visa

3    application, Plaintiff filed this case.  ECF No. 1.  The current delay is more than 16 months.[8]

4    Under facts alleged, that delay—without the benefit of explanation as to why processing the two-

5    and-a-half pages of additional information furnished by Plaintiff's spouse is taking so long—is

6    plausibly unreasonable.

7            In making this determination, the undersigned does not ignore Defendants' citation to

8    many cases where courts have found similar or longer delays to not be unreasonable.  ECF No. 7

9    at 15 n.3 (citing district court cases throughout the Ninth and D.C. Circuits); ECF No. 12 at 2 n.1

10   (citing district court cases within the Ninth Circuit).  However, most of those cases are inapposite,

11   as they dealt with delays involving processes or circumstances not at issue here: pre-consular

12   interview delays, delays in student- or employment-based visa applications (rather than family-

13   based applications), or delays justified to some extent by the COVID pandemic.  *See e.g.*,

14   *Ghalambor v. Blinken*, No. CV 23-9377 MWF (BFMx), 2024 WL 653377 (C.D. Cal. Feb. 1

15   2024) (19 month pre-interview delay); *Ahmed v. United States Dep't of State*, No. 23-cv-2474

16   SVK, 2024 WL 315705 (ND Cal Jan 26, 2024) (20 month pre-interview delay); *Khalili-Argahi*,

17   2023 WL 5988590 (N.D. Cal. Sept. 13, 2023) (approximately 30 month pre-interview delay);

18   *Khan v. Bitter*, No. 23-1576, 2024 WL 756643 (D.D.C. Feb 23, 2024) (29 month pre-interview

19   delay); *Armah v. United States Dep't of State*, No. 22-1714 (BAH), 2024 WL 2721634 (D.D.C.

20   May 28, 2024) (24 month pre-interview delay); *Daneshvarkashkooli v. Blinken*, 23-1225 (RJL),

21   2024 WL 1254075 (D.D.C. Mar. 25, 2024) (17-24 month post interview delay in student-visa

22   application case); *Rashidian v. Garland*, No. 1:23-cv-1187 (ACR), 2024 WL 1076810 (D.D.C.

23   Mar. 8, 2024) (17-21 month post-interview delay in student-visa application case); *Farooqui v.

24   Dep't of State*, No. 23-1081 (TSC), 2024 WL 1178468 (D.D.C. Mar. 8, 2024) (25 month post-

25   ────────────
     [8]  For post-interview delay cases, it appears the proper calculation of the delay is from the date of
26   the consular interview to the date of the court's decision on the delay.  *See e.g., Aminzadeh v.
     Blinken*, No. 2:24-cv-2025 DSF MRW, 2024 WL 3811153, at *6 (C.D. Cal. Aug. 9, 2024) (the
27   delay from the time of the interview to the date of the court's decision was not unreasonable);
     *Mosayebian v. Blinken*, No. 24-cv-0130 JLS (MMP), 2024 WL 3558378, at *7-8 (S.D. Cal. July
28   25, 2024) (same).

interview delay in business visa application case); *Khan v. Blinken*, No. 23-3474 (TJK), 2024 WL 2880426 (D.D.C. June 7, 2024) (2.5 year pre-interview delay in employment-based visa case); *Yacoub v. Blinken*, No. 21-cv-983 (TSC), 2022 WL 4598681 (D.D.C. Sept 30, 2022) (3.5 year delay for K-1 visa due to COVID).  As for cases that are analogous to the present facts—family-based post-consular-interview delays—the Court has reservations in following several of them because they rely on other cases that are inapposite to conclude that the post-interview delay at issue is not unreasonable.

For example, in *Ramirez Serrato*, in determining that a 17-month post-consular-interview delay was not unreasonable, the court relied on the fact that in the immigration context delays ranging from three to five years have not been found unreasonable.  *Ramirez Serrato v. Blinken*, No. 2:23-cv-0177 MKD, 2024 WL 3640459, at *4 (E.D. Wash. Aug. 2, 2024).  But the cases relied upon by *Ramirez* and the cases relied upon in those cases are distinguishable.  *See id.* (citing *Kapoor v. Blinken*, which deals with delays in a pre-interview context and cites to cases regarding delays in the asylum and adjustment of status contexts, 2022 WL 181217, at *4 (N.D. Cal. Jan. 20, 2022)).  Asylum and adjustment of status applicants are meaningfully different than consular processing because the entire adjudication process takes place within the United States, and family separation is not always a concern.

Similarly, in determining that a 17-month delay was not unreasonable in a post-interview delay case, the court in *Morales* cited to *Ortiz* for the proposition that delays of five, six, and seven years are not unreasonable in the immigration context.  *Morales v. Mayorkas*, 23-cv-1758 BEN (MSB), 2024 WL 2884554 at *3 (S.D. Cal. June 7, 2024) (quoting *Ortiz v. U.S. Dep't of State*, Case No. 22-cv-0508-AKB, 2023 WL 4407569 *8 (D. Idaho July 7, 2023)).  But *Ortiz* dealt with a pre-interview delay and relied on cases like *Siwen Zhang v. Cissna*, No. CV 18-9696, 2019 WL 3241187 (C.D. Cal. Apr. 25, 2019), which dealt with a four-year delay in an asylum case.

Instead of comparing delays in immigration cases generally, it is best to embrace the fact that TRAC is fact-intensive for a reason—not every immigration application process is the same and a justification for a delay in one context may not suffice in another context.

1    The Court also finds that Plaintiff has sufficiently pleaded an unreasonable delay in this

2  case because the delay substantially exceeds the 180-day timeframe Congress has suggested is

3  reasonable.  *See* 8 U.S.C. § 1571(b) ("[i]t is the sense of Congress that the processing of an

4  immigration benefit application should be completed not later than 180 days after the initial filing

5  of the application" with one exception).  Although the Ninth Circuit has held that similar "sense

6  of Congress" language is "non-binding, legislative dicta" which creates no obligations, *see Yang*

7  *v. California Dep't of Soc. Serv.*, 183 F.3d 953, 961-62 (9th Cir. 1999), it does provide valuable

8  insight as to what Congress thought would be reasonable in adjudicating immigration cases.  The

9  Court is not suggesting that delays beyond 180 days are in and of themselves unreasonable in all

10  types of immigration cases.  However, where Plaintiff has alleged a delay almost three times as

11  long—more than 16 months—and there is no justification for the delay on the face of the

12  complaint, Plaintiff has sufficiently plead unreasonable delay.[9]

13    Finally, the Court finds that the Plaintiff has sufficiently plead an unreasonable delay

14  because she has alleged significant hardship because of the lengthy delay.  ECF No. 1 at 4, 5.

15    Because Plaintiff has stated a claim on which relief may be granted, Plaintiff's IFP request

16  is granted.  Similarly, because dismissal is only proper under Rule 12(b)(6) "if it appears beyond

17  doubt that the non-movant can prove no set of facts to support its claims," *Boquist*, 32 F.4th at

18  773-74, and that is not the case here, the undersigned recommends the Court deny Defendants'

19  motion to dismiss.

20    **C.  Defendants' Motion for Summary Judgment is Premature**

21    Defendants also seek a summary judgment "based on the complaint filed May 9, 2024; the

22  other filings in the action; the accompanying points and authorities, declaration, and statement of

23  undisputed material facts; and any written or oral arguments that may be made hereinafter."  ECF

24  No. 5 at 3.

25    As an initial matter, the evidence supporting Defendants' motion for summary judgment is

26  negligible and consists entirely of one declaration by a DOS attorney-advisor who summarized

27

28  _____

[9]  It is also notable that the Refusal Worksheet Plaintiff's spouse received notes that
administrative processing is typically completed within 60 days. ECF 1 at 18 (Exh. F).

1   DOS's electronic database information concerning Mr. Moussawi.  ECF 5-2, ¶ 3.  The DOS

2   attorney-advisor states that a consular officer refused Mr. Moussawi's visa application,

3   determining that "additional security screening was required."  *Id*. ¶ 8.  The DOS attorney-advisor

4   also states that on July 5, 2023, Mr. Moussawi submitted "answers to questions consistent with

5   Form DS-5535" and the visa remains refused as of June 7, 2024.  *Id*. ¶ 11.  This declaration does

6   not present the court with enough information to adequately complete the TRAC analysis

7   discussed above.

8         The Court recognizes that Defendants' motion for summary judgement is properly filed,

9   and Plaintiff—while disputing certain facts, *see* ECF No. 8 at 3-4—did not expressly request

10   summary judgment-related discovery under Rule 56(d).  However, Plaintiff's failure to make a

11   request pursuant to Rule 56(d) "does not prevent the court from ordering a continuance or denial

12   *sua sponte*."  *HSBC Bank, USA, N.A v. Davis*, No. 12-cv-6801, 2014 WL 12775667, at *3 (N.D.

13   Ill. July 7, 2014); *see also Encinas v. University of Washington*, 2022 WL 4598083, at *8 (W.D.

14   Wash. Sept. 30, 2022) ("Defendant does not invoke Rule 56(d) . . . Nonetheless, the Court

15   considers the FRCP 56(d) factors *sua sponte* and finds that it is premature for the Court to

16   consider the Motion for Summary Judgment at this time."); *Diaz-Bernal v. Myers*, 758 F. Supp.

17   2d 106, 121 (D. Conn. Dec. 16, 2024) ("[T]he court may deny a motion if the party opposing a

18   motion for summary judgment 'cannot present facts essential to justify its opposition.' Fed. R.

19   Civ. P 56(d) (formerly (56(f)).  When a party requires additional discovery in order to oppose a

20   motion for summary judgment, a court may deny or continue the motion *sua sponte*.").  "[I]n

21   some cases" summary judgment "may be premature before an answer has been filed or discovery

22   has commenced."  *See* Fed. R. Civ. P. 56, Advisory Committee's Notes (2010 Amendments, Note

23   to Subdivision (b)).

24         Plaintiff should be allowed to conduct discovery and develop the record before the Court

25   rules on the merits of a summary judgment motion.  Indeed, judges from this Court and other

26   courts have denied pre-answer and pre-discovery motions for summary judgement as premature

27   despite technical compliance with Rule 56.  *See Sayyedalhosseini v. Los Rios Community College*

28   *District*, 2:23-cv-1571 DJC JDP, 2024 WL 2883475, at *6 n.6 (E.D. Cal. June 6, 2024); *Giles v.*

1    *San Joaquin Valley Rehab. Hosp.*, No. 1:21-cv-0732 JLT SKO, 2023 WL 5806539, at *1 (E.D.

2    Cal. Sept. 7, 2023) (collecting E.D. Cal. cases); *Ahuruonye v. United States Dep't of Interior*,

3    2016 WL 11956733, at *3 n.5 (D.D.C. Dec. 15, 2016) (citing several cases in D.D.C.); *see also*

4    *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("[o]nly in the rarest of

5    cases" may summary judgment "be granted against a plaintiff who has not been afforded the

6    opportunity to conduct discovery").  To the extent that this is a case that should be decided

7    wholly or partially on an administrative record—a question the Court does not decide today—

8    summary judgment would also be premature without that record.  *See e.g., Singh v. Cissna*, No.

9    1:18-cv-0782 SKO, 2018 WL 4770737, at *11 (E.D. Cal. Oct. 1, 2018) (declining to rule on a

10   motion for summary judgment in an APA case without the benefit of the complete administrative

11   record).

12        Accordingly, it is recommended that Defendants' motion for summary judgment denied

13   without prejudice to be refiled or supplemented at a later date.  Plaintiff's motions to supplement

14   the record (ECF No. 14) and for hearing on the motion for summary judgment (ECF No. 15) are

15   denied as moot.

16                                  **IV.    Conclusion**

17        IT IS ORDERED that Plaintiff's motion to proceed IFP (ECF No. 2) is GRANTED and

18   that Plaintiff's motions to supplement the record (ECF No. 14) and for hearing on the

19   motion for summary judgment (ECF No. 15) be DENIED without prejudice.

20        IT IS FURTHER RECOMMENDED that Defendants' motion to dismiss (ECF No. 5) be

21   DENIED and motion for summary judgment (*id.*) be DENIED without prejudice.

22        These findings and recommendations are submitted to the United States District Judge

23   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

24   days after being served with these findings and recommendations, either party may file written

25   objections with the court.  Such document should be captioned "Objections to Magistrate Judge's

26   Findings and Recommendations."  Local Rule 304(d).

27   ////

28   ////

                                        23

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 30, 2024

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE